UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MARK ANTHONY ADELL,

   Plaintiff,

 v.               Case No. 19-C-336

BRIAN FOSTER,
TONIA MOON,
NEVIN WEBSTER, and
J. MUENCHOW,

   Defendants.

# SCREENING ORDER

Plaintiff Mark Anthony Adell, who is currently serving a state prison sentence at Waupun Correctional Institution (WCI) and representing himself, filed a complaint under 42 U.S.C. § 1983, alleging that his civil rights were violated. On April 3, 2019, the court dismissed this action without prejudice for failure to prosecute under Civil Local Rule 41(c) because Adell failed to timely file a certified trust account statement for the six months preceding the filing of the complaint. The court gave Adell until April 24, 2019, to move to reopen the case and provide the required trust account statement. Adell has since filed a motion to reverse the court's order of dismissal, which this court construes as a motion to reopen, and a certified copy of his trust account statement. The court will grant the motion to reopen, waive the partial filing fee, and screen his complaint.

**MOTION TO PROCEED WITHOUT PREPAYMENT OF THE FILING FEE**

Adell has requested leave to proceed without prepayment of the full filing fee (*in forma pauperis*). A prisoner plaintiff proceeding *in forma pauperis* is required to pay the full amount of

the $350.00 filing fee over time. *See* 28 U.S.C. § 1915(b)(1). Adell has filed a certified copy of his prison trust account statement for the six-month period immediately preceding the filing of his complaint, as required under 28 U.S.C. § 1915(a)(2). It appears that Adell lacks the funds to pay an initial partial filing fee. Therefore, the court will waive the initial partial filing fee, 28 U.S.C. § 1915(b)(4), and grant Adell's motion to proceed *in forma pauperis*.

## SCREENING OF THE COMPLAINT

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Denton v. Hernandez*, 504 U.S. 25, 31 (1992); *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Hutchinson ex rel. Baker v. Spink*, 126 F.3d 895, 900 (7th Cir. 1997).

To state a cognizable claim under the federal notice pleading system, the plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain sufficient factual matter "that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court accepts the factual allegations as true and liberally construes them in the plaintiff's favor. *Turley v. Rednour*, 729 F.3d 645, 651 (7th Cir. 2013). Nevertheless, the complaint's allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted).

## ALLEGATIONS OF THE COMPLAINT

Adell's complaint, which totals twenty-three pages with sixty-five pages of attachments, details his efforts to use the inmate complaint review system (ICRS) at WCI to redress an issue he had with his medications. He alleges that he submitted an inmate complaint regarding his medications and that Inmate Complaint Examiner (ICE) Tonia Moon refused to accept the complaint due to its failure to identify the specific medications at issue. Adell resubmitted the complaint with the belief that he addressed Moon's concerns, but Moon confiscated it, claiming that Adell had failed to follow her previous directive. Dkt. No. 1-1 Ex. E. Adell then "assum[ed] Moon's confiscation could be construed as a final decision, albeit by proxy," and took steps to prepare a writ of certiorari action in state court, which needed to be filed within forty-five days. Dkt. No. 1 at ¶ 9.

Adell encountered several roadblocks in his attempt to prepare and timely file a certiorari action. First, he received a cell confinement penalty that limited his access to the law library absent a compelling reason such as a court-ordered deadline. Requests for library access were reviewed by Nevin Webster, WCI's librarian. Adell submitted an access request on January 17, 2019, which Webster rejected on the basis that no final adverse decision had occurred. Dkt. No. 1-1 Ex. D. Adell subsequently submitted second and third access requests. Webster rejected the second request for the same reason as the first and did not respond to the third request. *Id.* Ex. C. Adell later filed two additional access requests, the first of which was denied because the requested date was already scheduled and the second of which was denied because no time was available during the requested week. *Id.* Exs. 2, 9.

Second, Adell's attempts to complain about Webster's decisions to deny him access to the law library were fruitless. On January 27, 2019, Adell filed an inmate complaint challenging Webster's adverse decisions, which J. Muenchow, another ICE at WCI, refused to accept because Adell could only file one complaint per week. *Id.* Exs. H, I, N. Muenchow did not return the January 27th complaint until February 5th. Also on February 5th, Adell wrote to WCI warden Brian Foster to complain about Moon and Muenchow's handling of his complaints, but Foster determined that no mishandling occurred. *Id.* Ex. 3. Adell learned on February 11th that his complaint regarding library access was accepted for review on February 8th.

Finally, Adell experienced delays in receiving the documentation he submitted along with his complaint against Webster. Adell alleges that Moon did not promptly scan and return the attachments to the complaint but rather said, in response to multiple inquiries from Adell, that she would keep them until she was done with them. *Id.* Ex. 5. On February 19th, Adell again wrote Foster, and Foster referred Adell's concerns to Moon, who again told Adell he would receive the papers when his complaint was answered, but she also stated that "they were returned 2/22." *Id.* Ex. 10. Adell alleges that he received backlogged complaints that were not accepted but not the documents related to his complaint against Webster. Adell wrote to Foster to complain, but Foster noted that his complaint was still in the process of being investigated. *Id.* Ex. 11. Adell alleges that the documents he sought were returned on March 2nd in response to his correspondence to Moon and Foster.

Adell claims that these roadblocks impeded his ability to timely prepare and file a writ of certiorari action in state court to challenge the denial of his inmate complaint related to his medications. Based on these allegations, Adell seeks to bring claims of deliberate indifference to

4

medical needs, denial of access to the courts, retaliation against First Amendment protected activity, and civil conspiracy.

**THE COURT'S ANALYSIS**

The defendants comprise two ICEs, a warden, and a librarian, all of whom reviewed Adell's correspondence in various forms. While an inmate's correspondence to a prison official may establish a basis for personal liability under § 1983, liability for deliberate indifference in this context may only be established where that correspondence provides sufficient knowledge of a constitutional deprivation and is met with indifference. *See Perez v. Fenoglio*, 792 F.3d 768, 781–82 (7th Cir. 2015); *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009) ("Public officials do not have a free-floating obligation to put things to rights, disregarding rules (such as time limits) along the way. Bureaucracies divide tasks; no prisoner is entitled to insist that one employee do another's job. The division of labor is important not only to bureaucratic organization but also to efficient performance of tasks; people who stay within their roles can get more work done, more effectively, and cannot be hit with damages under § 1983 for not being ombudsmen.").

Adell fails to state such a claim against the defendants. Adell alleges that the first complaint he submitted to Moon had to do with his medications, but he does not sufficiently allege that Moon was made aware of a constitutional deprivation. Adell claims that his resubmitted complaint that Moon confiscated "alleged an imminent threat to his health," Dkt. 1 at ¶ 3, but such a vague and conclusory statement is insufficient to allege a condition that, if ignored, would raise a plausible right to relief. *See Twombly*, 550 U.S. at 555 (noting that plaintiff's pleading standard "requires more than labels and conclusions"); *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008) (setting forth standard for Eighth Amendment deliberate indifference claim); *McDavid v. Corizon,*

5

*Inc.*, No. 2:14-CV-00272-JMS-WGH, 2014 WL 5439621, at *4 (S.D. Ind. Oct. 23, 2014) ("[C]onclusory language that these defendants were deliberately indifferent to his serious medical needs does not meet the pleading standard."). Because Adell has not alleged that Moon or any of the other defendants was aware of but ignored an objectively serious medical condition, he may not proceed on a deliberate indifference claim against any of the defendants. *See Burks*, 555 F.3d at 595; *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007); *Matz v. Klotka*, 769 F.3d 517, 528 (7th Cir. 2014).

Adell may, however, proceed on an access-to-courts claim against Moon, Webster, and Muenchow. Prisoners have a constitutional right of access to the courts, and "state actors must respect that right by not impeding prisoners' efforts to pursue legal claims." *Ortiz v. Downey*, 561 F.3d 664, 671 (7th Cir. 2009) (citing *Lewis v. Casey*, 518 U.S. 343, 349–54 (1996); *Tarpley v. Allen Cty., Ind.*, 312 F.3d 895, 899 (7th Cir. 2002); *May v. Sheahan*, 226 F.3d 876, 883 (7th Cir. 2000)). This right includes meaningful access to law libraries or adequate assistance from persons trained in law. *Bounds v. Smith*, 430 U.S. 817, 821, 828 (1977). A plaintiff asserting an access-to-courts claim must allege that he suffered prejudice as a result of the defendants' conduct. *See Marshall v. Knight*, 445 F.3d 965, 968 (7th Cir. 2006). Prejudice requires allegations of specific facts such as court dates missed, inability to make timely filings, or the loss of a case that could have been won. *See Martin v. Davies*, 917 F.2d 336, 340 (7th Cir. 1990).

Adell has sufficiently alleged that he suffered prejudice. Adell sought to bring a certiorari action in state court after Moon confiscated and did not return his resubmitted complaint. Adell assumed that Moon's confiscation of his resubmitted complaint could be construed as a final decision capable of judicial review, meaning he would have a limited time to file a certiorari action

6

in state court. *See* Wis. Stat. § 893.735 (2017–18). Adell's claim is not without support. *See, e.g.*, *Johnson v. Meier*, 842 F. Supp. 2d 1116, 1118 (E.D. Wis. 2012) (denying summary judgment brought on exhaustion grounds because, as far as the court could tell, Chapter DOC 310 of the Wisconsin Statutes does not allow appeal from a complaint that was returned and not processed). Whether Moon's confiscation of the complaint served as a final decision or whether Adell's state court claim would succeed on the merits are questions this court need not decide at this screening stage, as is the question of whether certiorari was an available and appropriate remedy to obtain the relief Adell sought. *See Gentry v. Duckworth*, 65 F.3d 555, 559–60 (7th Cir. 1995); *see also Pratt v. Tarr*, 464 F.3d 730, 732–33 (7th Cir. 2006). Whether certiorari was an available remedy and, relatedly, whether exhaustion through the ICRS system to obtain a "final" decision marked the "accrual" of a cause of action under Wisconsin Statute § 893.735 such that a forty-five day period began to run are important issues because if certiorari was unavailable to Adell or, instead, was an available alternative to the ICRS system with no requirement of exhaustion, then Adell could not show prejudice. On this record and for the purpose of screening only, however, Adell's allegation that he was unable to timely file a state court action is sufficient to allege prejudice. *See Martin*, 917 F.2d at 340 (listing "inability to make timely filings" as an example of prejudice); *Marshall*, 445 F.3d at 968 (noting that the requirement to plead prejudice in access to courts claims "is simply a requirement that a prisoner's complaint spell out, in minimal detail, the connection between the alleged denial of access to legal materials and an inability to pursue a legitimate challenge to . . . prison conditions.").

Adell has also sufficiently alleged that Moon, Webster, and Muenchow's actions caused this prejudice. An attachment to Adell's complaint shows that Moon asked Adell to tell her what

7

medications were at issue to help medical staff know what to look at, and that Moon determined Adell did not comply. Dkt. No. 1-1 Ex. E. Adell alleges that his original complaint already complied and "concerned wholesale med[ication] frustrations," Dkt. No. 1 at ¶ 2, but Moon determined that the complaint, even as resubmitted, failed to comply with her past directive and therefore would not be processed under Wisconsin Administrative Code § DOC 310.10(5). Dkt. No. 1-1 Ex. E. Adell claims that Moon's confiscation was performed intentionally to prevent Adell from being able to exhaust his medications issue. Given that this allegation must be taken as true and is akin to a claim that Moon shredded Adell's grievance without reading it, *see, e.g.*, *Burks*, 555 F.3d at 598, Adell states an access to courts claim against Moon. Additionally, Moon's alleged intentional, multi-week delay in returning attachments to a later-filed complaint that Adell claims were necessary for preparing and filing a certiorari action is an additional basis for this claim.

As to Webster, Adell alleges that he sought access to WCI's law library because he needed to conduct research in preparation for timely filing a state court action, and that the library offered access to forms and provided notary and photocopying services. Dkt. No. 1 at ¶¶ 13, 15. Webster rejected Adell's requests for library access because he determined that Moon's confiscation was not a final disposition capable of review and because Adell requested access during dates/weeks that were already booked. Adell alleges that Webster exceeded his authority and acted with malice when he determined that Moon's confiscation could not constitute a final adverse decision. The issue of whether a confiscation (without return or rejection) of a resubmitted complaint under § DOC 310.10(5) is "final" for exhaustion purposes is unclear on the present record, as is Webster's authority to make such a determination. Whether ICRS exhaustion is a prerequisite for bringing a certiorari action, or is a wholly different avenue for relief, is also unclear. At least at this stage,

8

Adell may proceed on a claim that Webster denied him "meaningful" access to the courts by exceeding his authority and by using at least the issue of finality as an improper justification for restricting Adell's library access. *See Jenkins v. Lane*, 977 F.2d 266, 269 (7th Cir. 1992) (listing a restriction on "performing preliminary legal research" as an example of a "substantial and continuous" limitation on access to courts); *see also Campbell v. Miller*, 787 F.2d 217, 226 (7th Cir. 1986) (noting that, in right-to-access cases, "[t]he constitutionally relevant benchmark is *meaningful*, not total or unlimited access").

Regarding Muenchow, Adell claims that Muenchow intentionally delayed the processing and return of attachments to a complaint that were necessary for the preparation and filing of a certiorari action. Adell also claims that Muenchow purposely reordered the processing of Adell's pending complaints, which allowed him to reject Adell's complaint regarding Webster as untimely. These allegations of delay and interference are sufficient to allow Adell to proceed on an access-to-courts claim against Muenchow. *See Jenkins*, 977 F.3d at 268.

Adell may not proceed on an access-to-courts claim against Foster, however. Adell alleges that he wrote to Foster about Moon and Muenchow's handling of complaints, and that Foster found no wrongdoing. When Adell wrote to Foster regarding the delay in the return of the attachments to his complaint against Webster, Foster referred Adell to Moon, who reiterated her reasons for holding onto the attachments. Foster addressed and did not ignore Adell's correspondence. That Foster ultimately supported Moon and Muenchow does not mean he personally violated Adell's rights. Mere rejection of complaints is not enough to hold Foster liable. *See George*, 507 F.3d at 609 ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation."); *Matz*, 769 F.3d at 528 ("A damages suit under § 1983 requires that a defendant be

9

personally involved in the alleged constitutional deprivation."). Adell therefore states no claim against Foster.

In addition to access-to-courts claims, Adell states a retaliation claim against Moon, Webster, and Muenchow. To state a First Amendment retaliation claim, a plaintiff must allege "that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was 'at least a motivating factor' in the Defendants' decision to take the retaliatory action." *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009) (citing *Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008)). Adell alleges that he filed several complaints and requests for library access in an attempt to file a state court certiorari action after his complaint regarding a medication issue was confiscated. Adell further alleges that Webster denied several of his library access requests in retaliation for his filing an access request that questioned Webster's authority to determine that a confiscation of a complaint did not constitute a "final decision" that would trigger a state court certiorari filing deadline. *See* Dkt. No. 1 at ¶ 44. Adell also alleges that Moon and Muenchow intentionally delayed the return of documents he needed to file a certiorari action in retaliation of his continued pursuit of the certiorari action. *See id.* at ¶ 58. Construed liberally, and taking into account the allegedly missed certiorari deadline, these allegations are sufficient to allow Adell to proceed on retaliation claims against Moon, Webster, and Muenchow.

Finally, Adell fails to state a conspiracy claim. "To establish § 1983 liability through a conspiracy theory, a plaintiff must demonstrate that: (1) a state official and private individual(s) reached an understanding to deprive the plaintiff of his constitutional rights, and (2) those individual(s) were willful participants in joint activity with the state or its agents." *Fries v. Helsper*,

146 F.3d 452, 457 (7th Cir. 1998) (internal quotations and citations omitted). Adell alleges that "[a]ll of the claims in this case combine to comprise a conspiracy interposed by all of the defendants acting in collusion to prevent plaintiff from redressing the assault lodged to deprive him of the constitution [sic] rights at issue here." Dkt. No. 1 at 17. Under the conspiracy heading in his complaint, Adell alleges that Moon and Muenchow withheld documents to deliberately frustrate his ability to use them to prepare a certiorari action. *Id.* at 20–21. Alleging conspiracy is not a matter of combining or identifying similarities in claims, but rather allegations of cohesive, agreed-upon action are required. *See Evers v. Reak*, 21 F. App'x 447, 450 (7th Cir. 2001) (noting that "[v]ague and conclusory allegations of the existence of a conspiracy are not enough to sustain a plaintiff's [pleading] burden" and that "a complaint must contain factual allegations suggesting that the defendants reached a meeting of the minds") (citing *Amundsen v. Chi. Park Dist.*, 218 F.3d 712, 718 (7th Cir. 2000)). Adell's conspiracy allegations are vague and conclusory, and they are insufficient to state a conspiracy claim. *See Cooney v. Rossiter*, 583 F.3d 967, 971 (7th Cir. 2009) ("Even before the Supreme Court's new pleading rule, as we noted, conspiracy allegations were often held to a higher standard than other allegations; mere suspicion that persons adverse to the plaintiff had joined a conspiracy against him or her was not enough."); *LaPorta v. City of Chicago*, 102 F. Supp. 3d 1014, 1022–23 (N.D. Ill. 2015) (rejecting "bare, conclusory statement" as insufficient to state a conspiracy claim); *Mirbeau of Geneva Lake, LLC v. City of Lake Geneva*, 746 F. Supp. 2d 1000, 1010 (E.D. Wis. 2010) (relying on *Cooney* to dismiss § 1983 conspiracy claim because plaintiff "failed to allege *in detail* that [non-City defendants] shared a goal with City officials to deprive [plaintiff] of its constitutional rights" (emphasis added)).

11

In sum, Adell may proceed on access-to-courts and retaliation claims against Moon, Webster, and Muenchow. He may not proceed on any other claims.

**IT IS THEREFORE ORDERED** that Adell's motion to reverse the court's order of dismissal (Dkt. No. 7), which the court construes as a motion to reopen the case, is **GRANTED**. The court's previous judgment (Dkt. No. 6) is **VACATED**.

**IT IS FURTHER ORDERED** that Adell's motion for leave to proceed *in forma pauperis* (Dkt No. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that all claims against Brian Foster are **DISMISSED**.

**IT IS FURTHER ORDERED** that pursuant to an informal service agreement between the Wisconsin Department of Justice and this court, copies of the plaintiff's complaint and this order are being electronically sent today to the Wisconsin Department of Justice for service on the state defendants.

**IT IS FURTHER ORDERED** that, pursuant to the informal service agreement between the Wisconsin Department of Justice and this court, the defendants shall file a responsive pleading to the complaint within **sixty days** of receiving electronic notice of this order.

**IT IS FURTHER ORDERED** that the agency having custody of the prisoner shall collect from his institution trust account the $350.00 balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action. If

the plaintiff is transferred to another institution, the transferring institution shall forward a copy of this order along with the plaintiff's remaining balance to the receiving institution.

**IT IS FURTHER ORDERED** that copies of this order be sent to the officer in charge of the agency where the inmate is confined.

**IT IS FURTHER ORDERED** that the parties may not begin discovery until after the court enters a scheduling order setting deadlines for discovery and dispositive motions.

**IT IS FURTHER ORDERED** that, pursuant to the Prisoner E-Filing Program, the plaintiff shall submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. The Prisoner E-Filing Program is in effect at Columbia Correctional Institution, Dodge Correctional Institution, Green Bay Correctional Institution, Oshkosh Correctional Institution, Waupun Correctional Institution, and Wisconsin Secure Program Facility. If the plaintiff is no longer incarcerated at a Prisoner E-Filing Program institution, he will be required to submit all correspondence and legal material to:

>Honorable William C. Griesbach
>c/o Office of the Clerk
>United States District Court
>Eastern District of Wisconsin
>125 S. Jefferson Street, Suite 102
>Green Bay, WI 54301

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the matter.

The plaintiff is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute.

In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal

rights of the parties. Therefore, failure to provide a correct address could result in dismissal of the case for failure to prosecute.

Dated at Green Bay, Wisconsin this  29th  day of April, 2019.

s/ William C. Griesbach<br>
William C. Griesbach, Chief Judge<br>
United States District Court