UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MARK ANTHONY ADELL,

               Plaintiff,

       v.                                    Case No. 19-C-336

TONIA MOON, NEVIN WEBSTER,
and JAMES MUENCHOW,

               Defendants.

## DECISION AND ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS AND GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff Mark Anthony Adell, who is a Wisconsin state prisoner representing himself, filed a complaint under 42 U.S.C. § 1983. This court screened the complaint and allowed Plaintiff to proceed on access to court and retaliation claims against Defendants. Plaintiff moved for partial judgment on the pleadings against Defendant Nevin Webster, Dkt. No. 19, and all Defendants move for summary judgment, Dkt. No. 29. The motions are fully briefed and before this court for decision.

There is one preliminary matter regarding Plaintiff's motion, which is titled "Motion for Judgment on the Pleadings (Partial)." Dkt. No. 19. That motion is filed under Federal Rule of Civil Procedure 12(c), which "permits a judgment based on the pleadings alone." *N. Indiana Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452 (7th Cir. 1998). "Pleadings" include only "the complaint, the answer, and any written instruments attached as exhibits." *Id.* (citing Fed. R. Civ. P. 10(c)). To his brief in support of his motion, however, Plaintiff attached numerous exhibits, most of which were not attached to his complaint and postdate the complaint's

March 5, 2019 filing date.[1]  *See, e.g.*, Dkt. No. 20-1 at 1 (print date May 3, 2019), 4 (inmate

complaint dated March 17, 2019), 8 (interview/information request dated July 2, 2019).  Plaintiff

also submitted two affidavits in support, one of which also contains several new exhibits,

Dkt. No. 21-1, and the other addresses issues that occurred after the filing of his complaint.  Dkt.

No. 22.  None of these filings are "pleadings" that the court may consider under Rule 12(c).  And

the attachments and affidavits addressing issues that postdate the complaint are irrelevant to this

motion under Rule 12(c).  The court, therefore, will not convert Plaintiff's motion into one for

summary judgment under Rule 56, *see* Fed. R. Civ. P. 12(d); *N. Indiana Gun & Outdoor Shows,*

*Inc.*, 163 F.3d at 453 n.5, and will exclude the new exhibits and affidavits from consideration of

Plaintiff's motion under Rule 12(c).  *See Hung Nam Tran v. Kriz*, No. 08-C-228, 2008 WL

4889325, at *1 (E.D. Wis. Nov. 12, 2008) (citing *Omega Healthcare Investors, Inc. v. Res-Care,*

*Inc.*, 475 F.3d 853, 856 n.3 (7th Cir. 2007)).

## BACKGROUND

The facts in this section are taken from Defendants' Proposed Findings of Fact and

Declarations in Support.  Dkt. Nos. 31–34.  Plaintiff submitted a document titled "Plaintiff's

Proposed Findings of Fact," Dkt. No. 45, which contains only responses to Defendants' facts and

no additional facts.  The court will consider Plaintiff's responses only to the extent he provides

support for his positions in his affidavits or with evidence elsewhere in the record.  *See* Fed. R.

Civ. P. 56(c)(1)(A); Civil L. R. 56(b)(2)(B).

---

[1] The court's electronic docket lists the filing date of Plaintiff's complaint as March 5, 2019, yet that docket entry was entered March 6, 2019, the same date on which Plaintiff signed his complaint.  Dkt. No. 1 at 23.  The court will use the docket's filing date of March 5, 2019, as the date of filing for the purpose of this decision.

## A. The Parties

Plaintiff sues Institution Complaint Examiners ("ICE") Tonia Moon and James Muenchow and Institution Librarian Nevin Webster. Dkt. No. 31, ¶¶ 2–4. During all relevant times, Defendants were employees at Waupun Correctional Institution, where Plaintiff is an inmate. *Id.*, ¶¶ 1–4.

## B. Wisconsin's Inmate Complaint Review System

Under Wisconsin law, inmates may file only one complaint per week using the Inmate Complaint Review System ("ICRS"), unless the complaint concerns the inmate's health or personal safety or is made under the Prison Rape Elimination Act. Dkt. No. 31, ¶ 5 (citing Wis. Admin. Code § DOC 310.07(7) (2018)). Each complaint may address only one, clearly identified issue. *Id.*, ¶ 6 (citing Wis. Admin. Code § DOC 310.07(5)). Within ten days of receipt of a complaint, the ICE must provide to the inmate written notice of its receipt and either accept it, return it to the inmate for correction, or reject it. *Id.*, ¶ 7 (citing Wis. Admin. Code §§ DOC 310.10(1)–(5)).

Inmate complaints are uploaded to an electronic database, in which ICEs can view the complaints filed during that week. Dkt. No. 31, ¶ 8. An ICE reviews an inmate complaint to determine whether it addresses the inmate's health or personal safety. *Id.*, ¶ 11. If so, the complaint is assigned a number and investigated. *Id.* If not, and if it violates a Wisconsin Department of Corrections ("DOC") administrative rule, the ICE returns the complaint and sends the inmate a "return letter" that lists the reason for its return. *Id.*, ¶¶ 9–10.[2]

---

[2] Plaintiff disputes that Defendants Moon and Muenchow properly follow these regulations. Dkt. No. 45, ¶¶ 11, 13.

## C. Plaintiff's Inmate Complaints

In December 2018, Plaintiff filed inmate complaints about problems he had receiving refills of his medications at Waupun. Dkt. No. 31, ¶ 14. On December 13, 2018, Defendant Moon returned five complaints Plaintiff had filed because he had already submitted one for that week two days earlier. *Id.*, ¶ 15; Dkt. No. 33-6 at 27. One of the returned complaints curiously was stamped received the next day, December 14, 2018, and alleged that medical staff had "mishandled" Plaintiff's request for a refill of medication to treat his bowel disease. Dkt. No. 31, ¶ 16; Dkt. No. 33-2 at 10.

On December 19, 2018, Plaintiff resubmitted two of the returned complaints: his complaint about his medication refill and another alleging that he had been denied medication to treat migraines. Dkt. No. 31, ¶ 17. Two days later, Moon sent another letter to Plaintiff asking him to specify the medications discussed in his complaints, so the health services unit would know what to look for. *Id.*, ¶¶ 18, 20 (citing Wis. Admin. Code § DOC 310.10(5)); Dkt. No. 33-2 at 14. Plaintiff did not supply that additional information but on January 3, 2019, again resubmitted his complaint about his medication-refill request. Dkt. No. 31, ¶ 19; Dkt. No. 33-2 at 26.[3] Because Plaintiff failed to cooperate with Moon's instruction, she sent him a letter dated January 4, 2019, declining to accept his resubmitted complaint about his medication refill and returning his attachments. Dkt. No. 31, ¶¶ 20–21, 23; Dkt. No. 33-2 at 25. Because Moon never accepted the complaint, it did not receive a complaint number, was never investigated or received a decision, and was not entered into ICRS. Dkt. No. 31, ¶ 22.

---

[3] Plaintiff insists he "informed Moon that the complaint plainly asserted the information she was requesting," but he does not cite any evidence showing that alleged communication to Moon. Dkt. No. 45, ¶ 19. In his complaint, Plaintiff stated that he responded to Moon's directive, but the exhibit he cites is Moon's letter to him returning his complaint and attachments. Dkt. No. 1 at 3; Dkt. No. 1-1 at 9.

Plaintiff does not dispute that the complaint about his medication-refill request was never processed. Dkt. No. 45, ¶¶ 21–22. But he contends that Moon confiscated his complaint and refused to return or process it "as punishment for failing, in her view, to follow her directive" to supply additional information. *Id.*, ¶ 21. He asserts that Moon's confiscation of his complaint "put the ICRS out of plaintiff's reach." *Id.*, ¶ 22.

**D. Library Policies and Procedures**

Waupun inmates are given an institution handbook with information about the library, among other things, and institution facility procedures inform inmates how to obtain a library pass. Dkt. No. 31, ¶¶ 24–25. Inmates wishing to visit the library must request a pass and may request to visit during one week at a time. *Id.*, ¶ 27. Only twenty inmates are given library passes at a time. *Id.*, ¶ 26. Special priority passes may be given to inmates with verified court deadlines within forty-five days. *Id.*, ¶ 28. Unless it is closed, the library returns to inmates denied requests for library time with an explanation for the denial. *Id.*, ¶ 29. Defendant Webster and one library officer receive, process, and schedule all library passes. *Id.*, ¶ 57. To approve a pass request, the library must receive it by Wednesday of the preceding week, and the request must list the days and times the inmate requests the visit. *Id.*, ¶ 56.

Plaintiff did not always visit the library on days for which he had received a pass. Dkt. No. 31, ¶¶ 31–32; Dkt. No. 32-3 at 1, 3. This is because certain other passes given to inmates take precedence over library passes and must instead be used. Dkt. No. 31, ¶ 34. For example, Plaintiff had a library pass and a pass for a medical visit on January 8, 2019, so the medical visit was prioritized over his library visit, which was cancelled. *Id.*, ¶ 33; Dkt. No. 32-6 at 7–8.

## E. Plaintiff's Disciplinary Sanction

On January 15, 2019, Plaintiff was issued a conduct report for violating three DOC rules. Dkt. No. 31. He did not contest the conduct report and received thirty days' cell confinement as punishment, to begin January 16, 2019. *Id.*, ¶ 37. Defendants contend that because of this punishment, Plaintiff was not allowed to use his library pass for January 18, 2019. *Id.*, ¶¶ 39–40; Dkt. No. 32-3 at 3. Plaintiff, however, asserts that he had a legal deadline within forty-five days— a state petition for certiorari to challenge Moon's January 4, 2019 return of his inmate complaint about his medical-refill request—and therefore he should have been granted a priority pass to visit the library. Dkt. No. 45, ¶ 40. If Plaintiff had a verified court deadline, it was his responsibility to provide written verification of that deadline to library staff to receive the priority pass. Dkt. No. 31, ¶ 41.

## F. Plaintiff's Library Requests

Plaintiff received, and used, library passes for January 10 and 14, 2019—after Moon had sent the January 4, 2019 return letter but before his cell confinement began on January 16, 2019. Dkt. No. 31, ¶ 42; Dkt. No. 32-3 at 3. In his deposition, Plaintiff could not recall using his library time on January 4 or 10, 2019, to prepare his certiorari petition about Moon's actions but recalled using that time to research the petition. Dkt. No. 31, ¶¶ 43–44 (citing Dkt. No. 28 at 26:16–27:18). Plaintiff disputes what he describes as his "vague recall of facts" during his deposition and asserts that he was simply "attempt[ing] to cooperate with counsel's efforts to obtain the deposition." Dkt. No. 45, ¶ 43. But he cites no evidence contradicting his deposition testimony about his use of the library on January 10 and 14, 2019. *Id.*, ¶¶ 43–44.

Plaintiff again requested library access on January 17, 2019, while on cell confinement. Dkt. No. 31, ¶ 45. Defendant Webster received the request, which included a copy of Moon's

January 4, 2019 return letter stating that Plaintiff failed to cooperate with her directive. *Id.*, ¶ 46; Dkt. No. 32-5 at 1–2. Plaintiff explained to Webster that Moon's refusal to process his complaint or return it to him "finalized the complaint," even though he also posits that "[o]nly the Warden and DOC secretary had the authority to finalize the complaint." Dkt. No. 32-5 at 1. Webster responded to Plaintiff's note that "it is only from their decisions [the Warden or DOC Secretary] that a final reviewing authority certiorari petition deadline is set." Dkt. No. 31, ¶ 47; Dkt. No. 32-5 at 1. Because Plaintiff did not have a decision from the Warden or DOC Secretary on his complaint about his medication, Webster did not believe that Plaintiff had provided evidence of a verified court deadline within forty-five days. Dkt. No. 31, ¶ 49. And because Plaintiff was on cell confinement, Webster believed he was unable to afford Plaintiff a library pass. *Id.*, ¶ 50.

Plaintiff disputes these facts but offers no evidence in support and merely contests Webster's legal analysis. Dkt. No. 45, ¶¶ 45–46. He insists that Moon's return of his inmate complaint constituted a final decision, from which the forty-five-day certiorari deadline accrued. *Id.*, ¶¶ 48–50. Therefore, Plaintiff asserts, Webster improperly denied him library access on January 18, 2019. *Id.*, ¶ 50.

On January 22, 2019, Plaintiff sent Webster a request that he reconsider his denial of a library pass to Plaintiff because, Plaintiff asserted, Moon's return of his complaint constituted a final decision. Dkt. No. 31, ¶ 51. Webster maintained that Plaintiff did not have a verified court deadline because Plaintiff still lacked a decision from a final reviewing authority to prompt the certiorari deadline. *Id.*, ¶ 52. Webster therefore denied Plaintiff's request and responded that, "when you have a court deadline, you are welcome to submit verification of your deadline." *Id.*; Dkt. No. 32-5 at 4.

On Thursday, February 7, 2019, Plaintiff requested a library pass for February 15, 2019, after his cell confinement ended. Dkt. No. 31, ¶ 54. Although Plaintiff dated his request Wednesday, February 6, 2019, the library did not receive the request until Thursday of the week preceding the request date, so it was not timely. *Id.*, ¶ 58; Dkt. No. 1-1 at 35 (stamped received February 7, 2019). A library officer (not Webster) responded that all library passes for February 15, 2019, were scheduled, and the library was accepting passes for the following week. Dkt. No. 31, ¶ 54; Dkt. No. 1-1 at 35. Webster was never made aware of Plaintiff's February 7, 2019 request. Dkt. No. 31, ¶ 55. Plaintiff insists, without evidence, that Webster "was required to be aware of all library pass transactions" and that the officer who responded to his request lacked the authority "to make decisions on library passes." Dkt. No. 45, ¶¶ 54–55.

Plaintiff submitted another pass request on Tuesday, February 19, 2019, for the following week. Dkt. No. 31, ¶ 59; Dkt. No. 1-1 at 47. But the library did not receive the request until Thursday, February 21, 2019, so the library officer again told Plaintiff that the week was scheduled. Dkt. No. 31, ¶¶ 59–60; Dkt. No. 1-1 at 47. Webster avers that he has granted Plaintiff several library passes and has never intentionally denied him a pass to prevent him from meeting a filing deadline. Dkt. No. 31, ¶¶ 62–63. Plaintiff contests Webster's statements and insists that Webster denied him library passes to prevent him from timely filing his certiorari petition. Dkt. No. 45, ¶ 63.

## G. Plaintiff's Complaints about Library Access

On January 27, 2019, Plaintiff filed an inmate complaint about being denied access to the library, which the ICE office received two days later, on January 29, 2019. Dkt. No. 31, ¶ 65; Dkt. No. 33-2 at 34. Defendant Muenchow returned the complaint and its attachments one week later, on February 5, 2019, because Plaintiff had already filed (and the ICE office had already

processed) a complaint during the same week. Dkt. No. 31, ¶¶ 67–68; Dkt. No. 33-2 at 33. Plaintiff asserts that Muenchow deliberately entered his complaints out of order to deny the January 29, 2019 one for being the second filed in one week. Dkt. No. 45, ¶¶ 67–68.

Plaintiff resubmitted his January 29, 2019 complaint on February 7, 2019, and Moon accepted and processed the complaint. Dkt. No. 31, ¶ 69; Dkt. No. 33-3 at 11. Moon reviewed Plaintiff's attachments, which included his correspondence with Webster and notice of his thirty-days' cell confinement. Dkt. No. 31, ¶ 70. Based on Webster's request that Plaintiff submit a court decision or final decision from a reviewing authority, and Plaintiff's failure to submit either, Moon concluded there was no reason to believe Webster intentionally denied Plaintiff library access. *Id.*, ¶ 71. Therefore, on February 27, 2019, Moon recommended dismissal of Plaintiff's complaint, which the Warden accepted on March 9, 2019. *Id.*, ¶ 72; Dkt. No. 33-3 at 2–4. Moon did not contact Webster about the complaint and made her decision based only on the attachments. Dkt. No. 31, ¶ 75.[4] Moon avers that she returned Plaintiff's attachments and did not intentionally delay returning them to prohibit Plaintiff from filing a writ of certiorari. *Id.*, ¶¶ 72, 82. Plaintiff agrees he received back the exhibits but asserts Moon returned the attachments "only after she was done amusing herself . . . for an excessive amount of time" and insists she intentionally mishandled his complaints about Webster. Dkt. No. 45, ¶¶ 72, 82.

Plaintiff sought review of Moon's decision dismissing his complaint against Webster, and on March 21, 2019, a Corrections Complaint Examiner reviewed Plaintiff's appeal and recommended dismissal. Dkt. No. 31, ¶ 73; Dkt. No. 33-3 at 5–6. On April 3, 2019, the Office

---

[4] Plaintiff asserts that "[i]t is unlikely" Moon never contacted Webster about the complaint and insists that, at a minimum, Webster's supervisor must have contacted Webster about the complaint. Dkt. No. 45, ¶ 75. He cites no evidence in support of those assertions.

of the DOC Secretary accepted that decision and dismissed the complaint. Dkt. No. 31, ¶ 73; Dkt. No. 33-3 at 7.

## H. Plaintiff's Certiorari Petition

Plaintiff testified during his deposition that he wanted to file the certiorari petition in state court to argue "that the only person that can finalize a decision on an Inmate Complaint was the Warden and the Department's secretary, and this action of [Moon] confiscating [my complaint] was not promulgated as a rule." Dkt. No. 31, ¶ 86 (citing Dkt. No. 28 at 20:3–21:3). He planned to challenge "the abuse of the ICE's authority here, so that was what I thought gave me a cause of action was abuse of authority, and I saw it as a violation of my First Amendment rights. You're chilling my rights. That ended the Complaint." *Id.* Plaintiff further testified that Moon's use of return letters and holding his materials in January 2019 "was what gave me, I believe, the cause of action, without a doubt." *Id.*, ¶ 88 (quoting Dkt. No. 28 at 23:3–8). He testified that, with his certiorari action, he wanted to force the ICE office to

> abandon the practice and allow me to resolve my issues with the refills and stuff. . . . They could just keep doing it, which they have done repeatedly, confiscating the documents with no promulgated rule saying you can do it. So it was their abuse of their discretion that needed to be checked, so that's why I hoped that I would get an order prohibiting them from doing this.

*Id.*, ¶ 89 (quoting Dkt. No. 28 at 25:2–16).

## ANALYSIS

## A. Legal Standards

A motion under Federal Rule of Civil Procedure 12(c) is evaluated under the same standards that govern a Rule 12(b)(6) motion to dismiss. *See Adams v. City of Indianapolis*, 742 F.3d 720, 727–28 (7th Cir. 2014). As noted, the court may not look beyond the pleadings in ruling on a motion under Rule 12(c), accepts as true all facts alleged in the complaint, and construes all

reasonable inferences in favor of the non-moving party. *See Lodholtz v. York Risk Servs. Grp.*, 778 F.3d 635, 639 (7th Cir. 2015) (citations omitted); *United States v. Wood*, 925 F.2d 1580, 1581 (7th Cir. 1991). To prevail, the moving party must demonstrate "that there are no material issues of fact to be resolved." *Moss v. Martin*, 473 F.3d 694, 698 (7th Cir. 2007).

A party is entitled to summary judgment if it shows that there is no genuine dispute as to any material fact and it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Material facts" are those that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.*

Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). To survive a motion for summary judgment, a non-moving party must show that sufficient evidence exists to allow a jury to return a verdict in its favor. *Brummett v. Sinclair Broad. Grp., Inc.*, 414 F.3d 686, 692 (7th Cir. 2005).

Plaintiff responded to Defendants' Proposed Findings of Fact but, in that response, does not cite any record evidence, not even any of his affidavits provided in support of his response. "[A]rgument alone is insufficient to avoid summary judgment." *Cooper v. Haw*, --- Fed. App'x ----, No. 19-1661, 2020 WL 1231417, at *2 (7th Cir. Mar. 13, 2020) (citing *Beatty v. Olin Corp.*, 693 F.3d 750, 754 (7th Cir. 2012) ("[T]he nonmoving party needs to come forward with *evidence*." (emphasis in original)). Courts are not required to "wade through improper denials and legal argument in search of a genuinely disputed fact." *Curtis v. Costco Wholesale Corp.*,

807 F.3d 215, 219 (7th Cir. 2015) (quoting *Bordelon v. Chicago Sch. Reform Bd.*, 233 F.3d 524, 529 (7th Cir. 2000)).  Any purported factual disputes that Plaintiff fails to support with *evidence* will be construed in favor of Defendants.

## B. Exhaustion

Under the Prison Litigation Reform Act ("PLRA"), an inmate cannot assert a cause of action under federal law "until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a); *see Woodford v. Ngo*, 548 U.S. 81, 93 (2006).  Exhaustion requires that an inmate comply with the rules applicable to the grievance process at the inmate's institution.  *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002).  This requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

The Court of Appeals for the Seventh Circuit applies a "strict compliance approach to exhaustion," *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006), and expects inmates to adhere to "the specific procedures and deadlines established by the prison's policy," *King v. McCarty*, 781 F.3d 889, 893 (7th Cir. 2015) (citing *Woodford*, 548 U.S. at 93).  Because exhaustion is an affirmative defense, Defendants bear the burden of proving that Plaintiff failed to exhaust. *See Pavey v. Conley*, 544 F.3d 739, 740–41 (7th Cir. 2008) (citing *Jones v. Bock*, 549 U.S. 199, 216 (2007)).  Inmates must exhaust all administrative remedies that the DOC has promulgated by rule before commencing a civil action against an officer, employee, or agent of the DOC.  Wis. Admin. Code § DOC 310.05.  To fully exhaust administrative remedies in Wisconsin, the inmate must appeal an adverse decision by the reviewing authority to the Corrections Complaint

Examiner and await a final decision from the Office of the DOC Secretary. *Id.*, §§ DOC 310.12(1), 310.13(1), (3)–(4).

## C. Law Governing Access to Court and Retaliation

As discussed in the order screening Plaintiff's complaint, prisoners retain a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821–22 (1977) (citing *Ex Parte Hull*, 312 U.S. 546 (1941)); *see Ortiz v. Downey*, 561 F.3d 664, 671 (7th Cir. 2009). To protect this right, prison authorities must "provid[e] prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds*, 430 U.S. at 828. To succeed on a claim that prison officials denied a prisoner access to the courts, the prisoner must show that "the defendants' conduct prejudice[d] a potentially meritorious challenge to the prisoner's conviction, sentence, or conditions of confinement." *Marshall v. Knight*, 445 F.3d 965, 968 (7th Cir. 2006). In addition, the U.S. Supreme Court has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis v. Casey*, 518 U.S. 343, 353 & n.3 (1996)). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 416.

To proceed on a First Amendment claim of retaliation, Plaintiff must show that "he engaged in a protected activity, he suffered a deprivation likely to prevent future protected activities, and there was a causal connection between the two." *Felton v. Huibregtse*, 525 F. App'x 484, 486 (7th Cir. 2013) (citing *Watkins v. Kasper*, 599 F.3d 791, 794 (7th Cir. 2010); *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009)). To survive summary judgment, Plaintiff

must present evidence showing that his protected activity was a sufficient condition of Defendants' allegedly retaliatory actions. *Greene v. Doruff*, 660 F.3d 975, 978 (7th Cir. 2011).

### D. Plaintiff's Access-to-Courts Claims

The court allowed Plaintiff to proceed on claims that each Defendant interfered with his right to access the courts. Defendants assert that summary judgment on these claims is proper because Plaintiff failed to exhaust his administrative remedies against all Defendants. Dkt. No. 30 at 15–16. They also contend that his claims fail because there is no evidence that Defendants intentionally prevented Plaintiff from filing his certiorari action, and that it would have been meritless anyway. *Id.* at 17.

#### 1. Defendant Webster

Plaintiff filed an inmate complaint about Webster's denial of his requests for library passes on January 27, 2019, but the ICE office rejected the complaint because Plaintiff had already filed one complaint during that same week. Dkt. No. 33-2 at 33. Plaintiff resubmitted the complaint, which the ICE office received for processing on February 7 or 8, 2019.[5] Dkt. No. 33-3 at 1, 11. On February 27, 2019, Moon recommended dismissal of the complaint, and on March 9, 2019, the Warden dismissed it. *Id.* at 3–4. Plaintiff appealed, which the Corrections Complaint Examiner received on March 20, 2019, and the next day recommended dismissal. *Id.* at 5–6. The Office of the Secretary dismissed the complaint April 3, 2019, marking the final decision on the complaint and the date of exhaustion. *Id.* at 9. Plaintiff, however, filed his complaint challenging Webster's actions on March 5, 2019, nearly a month before a final decision had been made on his inmate complaint challenging the same.

---

[5] The inmate complaint itself is stamped received on February 7, 2019, but the ICE receipt states the complaint was received on February 8, 2019. This one-day difference does not affect the court's conclusion about whether Plaintiff exhausted his administrative remedies.

Plaintiff does not challenge Defendants' assertion that he failed to exhaust his administrative remedies on his access-to-courts claim against Webster. And the evidence shows that a decision on his inmate complaint regarding that claim was not final until April 3, 2019—nearly a month after he filed his complaint. Plaintiff's access-to-courts claim against Webster is therefore dismissed without prejudice for Plaintiff's failure to exhaust his administrative remedies. *See Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004) (holding that "*all* dismissals under § 1997e(a) should be without prejudice" (emphasis in original)).

### 2. Defendants Moon and Muenchow

Plaintiff asserts that Moon wrongly confiscated and would not return his inmate complaint and attachments after she returned it for not providing the additional information she requested. He contends that her actions "put use of the ICRS . . . out of his reach" and constituted a "final decision" on his complaint, which she as a complaint examiner lacks the authority to make. Dkt. No. 41 at 5. He also asserts that Moon's actions prevented him from timely filing a state court certiorari petition challenging Moon's use of return letters and rendering what he believed constituted a final decision on his complaint. Plaintiff asserts that Muenchow denied him access to the courts by rejecting his complaint about Moon's actions and delaying the return of documents he needed to file his state court certiorari action.

It is not clear whether Muenchow's rejection of Plaintiff's complaint against Moon exhausted his administrative remedies on that claim. Plaintiff filed a complaint about Moon's confiscation of his documents on January 16, 2019. Dkt. No. 34-2 at 8. Muenchow denied that complaint because the issue with Moon was "exhausted through the ICRS." *Id.* at 2. That suggests Moon's return of Plaintiff's complaint was, in effect, a final decision on that complaint that Plaintiff could not further appeal. Wisconsin Admin. Code § DOC 310.10(5) appears to

suggest the same. That statute says that an ICE "may return a complaint within 10 days" and "permit the inmate to resubmit the complaint after correcting issues noted by the ICE." Wis. Admin. Code § DOC 310.10(5). Inmates are allowed only "one opportunity to correct and resubmit a returned complaint." *Id.* When Plaintiff resubmitted his complaint, without providing any further information, Moon properly rejected it, ending the ICRS process for that complaint.

Muenchow also denied Plaintiff's complaint against Moon, explaining that "a complaint that requests or would prompt redress or any new evaluation of issues within any prior complaint, including the actions of the ICE who processed that prior complaint, is merely an appellate action and would be contrary to DOC 310.09 and DOC 310.10." Dkt. No. 34-2 at 2. Because Plaintiff previously filed a complaint about his medications (the underlying issue in his complaint against Moon), Muenchow rejected Plaintiff's complaint under Wis. Admin. Code § DOC 310.10(6)(g), which allows an ICE to reject a complaint if "[t]he issue has already been addressed through the inmate's prior use of the ICRS." The Warden then approved Muenchow's rejection of Plaintiff's complaint, and Plaintiff did not seek further appeal of that decision. Dkt. No. 34-2 at 6–7.

From the record, it appears Plaintiff did exhaust his administrative remedies for his complaint about his medication refill (the one Moon returned), but it is not clear whether he could have further appealed the complaint Muenchow rejected as an improper appeal. Because it is not clear from the record, Defendants have not met their burden to prove that Plaintiff failed to exhaust his administrative remedies for his access-to-court claims against Moon and Muenchow. On the merits, however, these claims must fail.

In his certiorari action, Plaintiff planned to challenge "the abuse of the ICE's authority" in using the return letters to, as Plaintiff characterized it, finalize the decision on a complaint and raise a claim that his First Amendment rights had been violated. Dkt. No. 28 at 20:22–22:2. But

a court reviewing a certiorari petition under Wis. Stat. § 893.735 may determine only "whether the agency kept within its jurisdiction, it acted according to law, its action was arbitrary or unreasonable and represented its will and not its judgment, and the evidence was such that it might reasonably make the determination in question." *State ex rel. Richards v. Leik*, 499 N.W.2d 276, 280 (Wis. Ct. App. 1993) (citing *State ex rel. Lomax v. Leik*, 454 N.W.2d 18, 20 (Wis. Ct. App. 1990)). Plaintiff could not raise a First Amendment challenge in the certiorari petition. The proper avenue for bringing that claim is a complaint under 42 U.S.C. § 1983, which is what he filed in this case. Plaintiff fails to show that his certiorari petition would have raised "a potentially meritorious challenge" to the conditions of his confinement. *Marshall*, 445 F.3d at 968.

Even if Plaintiff's certiorari petition would have been meritorious, he fails to show that Moon and Muenchow's actions caused him any injury. Although Plaintiff contends that Moon put the ICRS "out of his reach," she returned his grievance because he failed to follow DOC administrative rules about filing complaints. Under Wis. Admin. Code § DOC 310.10(5), an ICE "may return a complaint within 10 days" and "permit the inmate to resubmit the complaint after correcting issues noted by the ICE." Inmates are allowed only "one opportunity to correct and resubmit a returned complaint." *Id.* Plaintiff never attempted to correct his complaint and merely resubmitted it. Therefore, under § DOC 310.10(5), Moon properly rejected the complaint. Plaintiff then filed a complaint against Moon, which Muenchow denied because it was, in effect, an improper appeal of Moon's decision. Dkt. No. 34-2 at 2, 8. The ICRS was not "out of [Plaintiff's] reach" merely because he is dissatisfied with the results he received by misusing it.

Moreover, even if Plaintiff was unable to raise his First Amendment claim in his certiorari action, and even if that action would have had merit, he was able to file this § 1983 lawsuit in which he raises similar First Amendment challenges. His retaliation claim against Moon,

addressed below, alleges that she confiscated his documents intentionally to keep him from filing the certiorari action against her. To the extent he sought to raise a different First Amendment issue against Moon in the certiorari action, he could have and should have included that claim in this § 1983 action. *See* Fed. R. Civ. P. 18(a). Because he was able to file this § 1983 action raising First Amendment challenges, he cannot show any lost remedy from Moon and Muenchow's actions, even if they did prevent him from filing the state court certiorari petition. Plaintiff, therefore, cannot show that he suffered an injury, and his access-to-court claim fails.

## E. Plaintiff's Retaliation Claims

Plaintiff asserts that all three Defendants retaliated against him for filing his grievances. He asserts that Moon and Muenchow intentionally confiscated his inmate complaint and attachments to prevent him from filing his state court certiorari action. Plaintiff contends that Webster continuously denied his requests for library passes because he had questioned Webster's authority to determine whether Moon's confiscation of his complaint finalized the grievance process and allowed Plaintiff to file a state court certiorari petition. Although Plaintiff's act of filing previous complaints is protected activity, *see Pearson v. Welborn*, 471 F.3d 732, 741 (7th Cir. 2006), the evidence does not provide any basis on which to conclude that Defendants denied his complaints, in part or in whole, to retaliate against him. The evidence instead shows that each Defendant acted according to the DOC's rules for inmate grievances.

Webster denied Plaintiff's January 17 and 22, 2019, requests for a library pass because Plaintiff was confined to his cell during that time. Webster concluded that Moon's confiscation of Plaintiff's complaint did not constitute a final decision. And because Plaintiff did not present a final decision on his complaint from the Warden or Office of the Secretary, or verification of an upcoming court deadline, Webster did not believe Plaintiff qualified for a priority library pass

while serving his cell confinement. Even if Webster was incorrect in those determinations, that mistake would not equate to a retaliatory motive for denying Plaintiff library passes. There is no evidence that Webster denied the library passes even partly because Plaintiff challenged his conclusions about the finality of Plaintiff's complaint. Lacking evidence of a causal connection between Plaintiff's protected conduct and Webster's denial of the library pass, Plaintiff's claim of retaliation against Webster must fail.

Plaintiff has also failed to present evidence that Webster continued to deny him library access in February 2019 because of Plaintiff's complaints about being denied library access in January 2019. Plaintiff provides no evidence that Webster was even aware that Plaintiff had filed a complaint about his denial of library passes in January 2019. Webster was not involved in the denial of Plaintiff's request for a library pass on February 15, 2019, and that pass was denied because all passes for that week had already been scheduled. The same happened with Plaintiff's February 19, 2019 request for a pass. Although Plaintiff insists that library passes were available, he presents no evidence to substantiate that claim. His unsupported speculation about Webster's motive for denying him library passes is insufficient to defeat summary judgment. *See Turley v. Rednour*, 555 F. App'x 606, 609 (7th Cir. 2014) (citing *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008); *McCoy v. Harrison*, 341 F.3d 600, 604 (7th Cir. 2003)).

Nor is there evidence that Moon withheld his complaint to retaliate against him. In her January 4, 2019 return letter to Plaintiff, Moon stated that she would not be returning his complaint about his medication refills but was returning all attachments to the complaint. Dkt. No. 33-2 at 25. Although the evidence suggests Moon did keep Plaintiff's complaint when he submitted it for the third time, Moon could not have done so in retaliation against Plaintiff for the certiorari action he had not yet filed. And Plaintiff submitted no evidence showing that Moon

knew Plaintiff intended to file the certiorari action as of January 4, 2019, and was attempting to prevent him from filing it.

Plaintiff asserts that Moon also withheld his processed February 8, 2019 complaint against Webster for denying him library access (and its attachments) for over two weeks. But that complaint was not resolved until February 27, 2019. Dkt. No. 33-3 at 2–3. Moon stated that, as is customary, she keeps processed complaints and their attachments until she is "able to close out [the] submission (by either accepting it and processing it as a complaint, returning it, or not accepting it as a submission)." Dkt. No. 33, ¶ 30. She prefers to keep the submitted documents because photocopies tend to be illegible, and she has had to ask inmates to resend documents. *Id.*, ¶ 32. Moon stated that she was unaware Plaintiff sought to file a certiorari action in state court, *id.*, ¶ 31, and Plaintiff points to nothing in the record that suggests otherwise. Because there is no evidence that Moon withheld Plaintiff's documents for any reason other than her customary practice when resolving inmate complaints, Plaintiff's retaliation claim against her must fail.

Plaintiff also asserts that Muenchow did not return his complaint against Webster until February 5, 2019, one week after he had submitted it. But his complaint against Webster is not what he sought to challenge in his certiorari action. He wanted to contest Moon's practice of using return letters. Even if Plaintiff did need the documents relating to his complaint against Webster to file a certiorari action, Muenchow could not have retaliated against Plaintiff for filing the certiorari action *before* he filed it. Nor does Plaintiff present evidence that Muenchow was aware that Plaintiff planned to file the certiorari petition and withheld his documents in retaliation for planning to file it. Like his same claim against Webster, Plaintiff's retaliation claims against Moon and Muenchow rely entirely on unsubstantiated speculation, which is insufficient to defeat summary judgment.

## F. Plaintiff's Rule 12(c) Motion

Plaintiff's motion seeks judgment against Defendant Webster only. Dkt. No. 20 at 1 ("Plaintiff seeks Partial Judgment on the Pleadings against defendant Webster through the aegis of this foregoing Motion Pursuant to FRCP rule # 12(c)."). But as the court noted in the order screening Plaintiff's complaint, several questions about his claim against Webster were unclear based on only the complaint and its attachments. Dkt. No. 9 at 8–9. It was unclear whether Moon's confiscation of Plaintiff's complaint constituted a "final decision" for exhaustion purposes, whether Moon had the authority to make such a decision, and whether Plaintiff was required to exhaust before bringing a certiorari action in state court. *Id.* Although it was appropriate to allow Plaintiff to proceed on this claim despite those unresolved questions, judgment on the pleadings is not appropriate unless "the moving party has clearly established that there are no unresolved material issues of fact and he or she is entitled to judgment as a matter of law." *Schroeder v. Shawano Cty.*, 870 F. Supp. 2d 622, 626 (E.D. Wis. 2012) (citing *Nat'l Fidelity Life Ins. Co. v. Karaganis*, 811 F.2d 357, 358 (7th Cir. 1987)).

Plaintiff does not demonstrate how *the pleadings* answer the unresolved questions and entitle him to relief against Webster. He instead relies on numerous newly attached exhibits, which the court may not consider when deciding a motion under Rule 12(c). Moreover, the majority of his "Statement of [F]acts" simply quotes the court's order screening his complaint. An order from this court is not a "pleading" or a proper basis from which to recite the facts of a claim. The facts, as provided in Plaintiff's complaint and taken as true for the purposes of screening, sufficed to state a potential legal claim. But those facts alone do not demonstrate that

Plaintiff is entitled to judgment. His motion for partial judgment on the pleadings against Webster is therefore **DENIED**.[6]

<h3 style="text-align:center">CONCLUSION</h3>

**IT IS THEREFORE ORDERED** that Plaintiff's motion for partial judgment on the pleadings, Dkt. No. 19, is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' motion for summary judgment, Dkt. No. 29, is **GRANTED**, and this case is **DISMISSED**.

Dated at Green Bay, Wisconsin this 27th day of March, 2020.

s/ William C. Griesbach
William C. Griesbach, District Judge
United States District Court

---

This order and the judgment to follow are final. Plaintiff may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. *See* Fed. R. App. P. 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). If Plaintiff appeals, he will be liable for the $505.00 appellate filing fee regardless of the appeal's outcome. If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* with this court. *See* Fed. R. App. P. 24(a)(1). Plaintiff may be assessed another "strike" by the Court of Appeals if his appeal is found to be non-meritorious. *See* 28 U.S.C. § 1915(g). If Plaintiff accumulates three strikes, he will not be able to file an action in federal court (except as a petition for habeas corpus relief) without prepaying the filing fee unless he demonstrates that he is in imminent danger of serous physical injury. *Id.*

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of judgment. The court cannot extend these deadlines. *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

---

[6] Even if the court were to convert Plaintiff's motion into one for summary judgment under Federal Rule of Procedure 56, he would not be entitled to judgment. As noted above, Plaintiff failed to exhaust his administrative remedies on his claim against Webster before filing his complaint. Plaintiff provides no evidence or argument in his summary judgment response materials to contest that conclusion.